## J. EDWARD HOLLOWAY, RELATOR, v. FRANK LEE DICKINSON ET AL.

Submitted December 4, 1902—Decided February 24, 1903.

Members of a *de facto* board of education, organized under the General School law (*Pamph. L.* 1902, *p.* 69), cannot be ousted at the instance of a private relator in *quo warranto* on the ground that such board of education has no legal corporate existence.

---

On demurrer to information in the nature of a writ of *quo warranto.*

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL, FORT and PITNEY.

For the relator, _Samuel W. Beldon._

For the respondents, _Edwin G. C. Bleakly._

The opinion of the court was delivered by

PITNEY, J. This information was filed in the name of the attorney-general at the relation of a resident and property owner acting under leave of the court. Its purpose is to contest the right of the respondents to hold and execute the office of members of the board of education of the city of Camden. The proceeding is instituted under the act of March 17th, 1795, relative to informations in the nature of a _quo warranto. Gen. Stat., p._ 2632. So far as this court is concerned, it is established by a long line of decisions that the scope of this act is confined to cases where there exists an office or franchise _de facto_ or _de jure,_ and where the controversy relates to the right of an individual or individuals to hold such office or franchise; that the act does not contemplate or authorize an attack to be made upon the existence of a public corporation by a private relator, and that such an attack must still be conducted by the attorney-general, acting as the representative of the people of the state. _State_ v. _Paterson and Hamburg Turnpike Co.,_ 1 _Zab._ 9; _State, ex rel. Mitchell,_ v. _Tolan,_ 4 _Vroom_ 195; _Terhune_ v. _Potts,_ 18 _Id._ 218; _Stout_ v. _Zulick,_ 19 _Id._ 599; _Gibbs_ v. _Somers Point,_ 20 _Id._ 515; _Steelman_ v. _Vickers,_ 22 _Id._ 180; _Richman_ v. _Adams,_ 30 _Id._ 289; _Hann_ v. _Bedell,_ 38 _Id._ 148. In the first three cases the question arose on application made to the court for the exercise of its discretionary power to grant leave to file an information. But in Gibbs _v._ Somers Point such leave had been granted, and, on demurrer to the information filed thereunder, it was held that the act of 1795 did not permit an information against a corporation to be joined with an information at the instance of private relators against officers in the corporation; the joinder of the name of the attorney-general was treated as a matter of form, and it was held that the pleading in this form was illegal. And in Steelman _v._ Vickers, which was likewise decided on demurrer to an information, it appeared simply that the title of the incum-

bents of certain municipal offices was attacked on the ground that the public corporation had no legal existence. And although the information did not assail the corporate life of the municipality itself, it was held that to permit a private relator to oust one of the corporate officers on the ground suggested would be to permit that to be done indirectly which could not be done directly, and therefore the demurrer was sustained. The decision in Richman *v.* Adams is to the same effect.

In the present case, among the causes of demurrer specified is one to the effect that it is not competent for the people, through the relator, to question the respondents' title by *quo warranto.* If, therefore, it appears from the information that their title is questioned solely on the ground that the corporation of which they assume to be members has no legal existence, the demurrer must be sustained.

Among the averments of the information are these: that prior to March 26th, 1902, the public schools in the city of Camden were under the control and management of a board of education, known as the commission of public instruction, organized under the provisions of an act of the legislature approved March 10th, 1892, providing for the establishment of such a commission in certain cities (*Pamph. L., p.* 82; *Gen. Stat., p.* 3096), and that since the 26th day of March, 1902, there has existed, and now exists, in the city of Camden a corporation, known as the board of education of the city of Camden, created and established under and by virtue of "An act to establish a system of public instruction," approved March 26th, 1902. *Pamph. L., p.* 69.

The information avers that the board appointed under the act of March 10th, 1892, is the proper board of education of the city of Camden. It nowhere avers in terms that the respondents claim title to membership in that board, nor is such an inference to be derived from the facts averred in the information unless the force of the act of 1902 is merely to change the personnel of the board of education and not to establish a new corporate body in place of the former one. The title claimed by the respondents will appear from what follows.

By "An act to establish a system of public instruction," approved March 23d, 1900 (*Pamph. L., p.* 192, §§ 45, 46), and by an amendatory act, approved March 21st, 1901 (*Pamph. L., p.* 222), it was provided that in each city, incorporated town, borough, township or other municipality divided into wards it should be referred to the people to determine whether their board of education should be selected by appointment of the mayor or other chief executive officer or should be chosen by vote of the people. By section 85 of the act of 1900 it was provided that in municipalities not divided into wards the board of education was to be elected at the annual school meeting.

The information avers that in the city of Camden in the year 1900, under the provisions of the general act of that year just referred to, the question of acceptance of the provisions of section 46 of that act was submitted to the voters of the city and was determined in favor of the creation of an elective school board, and that at the general election held in November, 1901, the respondents were elected members of the board of education, to take office July 1st, 1902.

Shortly thereafter the Court of Errors and Appeals decided the act of 1900 to be unconstitutional *in toto* by reason of its discrimination between municipalities that are divided into wards and those that are not so divided. *Lewis* v. *Jersey City,* 37 *Vroom* 582.

Thereafter the legislature enacted another "Act to establish a system of public instruction" (*Pamph. L.* 1902, *p.* 69), which was approved March 26th, 1902, and took effect immediately.

In this act sections 42 to 80, inclusive, are grouped under the title "Article VI. Boards of education in city school districts." These sections provide in effect that in school districts located within any city there may be a submission to the qualified voters of the question whether the members of the board of education shall be elected by the people or shall be appointed by the mayor or other chief executive officer; whichever method is adopted, the members are to be selected accordingly, and when organized are created a body corporate with full powers; the public school property of the district

is vested in the corporation thus created, and the supervision, management and control of the public schools of the district are confided to the same body. By section 80 it is distinctly declared that until the organization of a board of education in accordance with the provisions of section 42 or section 43, the administration and conduct of the public schools and the management and control of the school property shall remain in any board of education or other body theretofore having control; and that upon the organization of a board of education as provided in section 42 or 43, the board of education theretofore having control of the public schools in such city shall be, *ipso facto,* abolished.

The sections from 81 to 99, inclusive, are grouped under the title "Article VII. Boards of education in township, incorporated town and borough school districts." These sections provide for the establishment of a school district in each of the municipalities indicated, with a board of education whose members are to be chosen by election at the annual school meeting, there being no option conferred upon the voters to adopt the appointive instead of the elective system of choosing the members, such as is conferred upon city school districts by the provisions of article VI.

We deem it entirely clear that the purpose of the provisions contained in article VI. of this act is to terminate the corporate existence of all public corporations theretofore created for the management and control of the public schools in the cities of this state, and not merely to change the personnel of their membership.

The information shows that since the approval of the act of 1902 there has been no submission to the qualified voters of the city of Camden of the question whether their board of education shall be elected or appointed. The averment is that the respondents claim office under and by virtue of the provisions of section 246 of that act. This section declares, in substance, that all elections or submissions to the vote of the qualified voters of any school district of the question whether in such school district the board of education should be created by election by the people or otherwise, and the attendant proceedings heretofore done or taken pursuant to

and in substantial compliance with the act of 1900 shall be validated and confirmed as fully and to the same extent as though done after the passage of and in conformity with this act; and in every such district hereafter, if the appointive system has been adopted, the board of education shall be appointed and organized under the provisions of section 42 of this act; and if the elective system has been adopted, then the board of education shall be hereafter elected and organized under the provisions of section 43 of this act; and all elections for members of the board of education in any such school district held pursuant to and in substantial compliance with said act of 1900 are validated and confirmed as fully and to the same extent as if done after the passage of and in conformity with this act; and the members so elected shall constitute and be the board of education of such school district and shall be deemed to be incorporated under section 48 of this act; and all other elections, actions and proceedings heretofore done or taken in substantial compliance with said act are hereby validated and confirmed as fully and to the same extent as though done after the passage of and in conformity with this act.

It will be seen at once that if the act of 1902 is valid, including section 246, the effect of the latter section is to make the vote of the people of Camden taken in the year 1900 as efficacious for adopting the elective system of choosing members of the board of education as if that election had been held after the passage of the act of 1902; and in like manner the election of November, 1901, at which the respondents were chosen to hold office in that board, is made as good and valid as if it had been held after the passage of the act of 1902. If these proceedings had taken place after the latter enactment the respondents would be a board of education organized under section 43 of this act and would be made a corporation by the terms of section 48 and the other sections in article VI. contained. And by the terms of section 80, upon their organization as such board, the former board of education, known as the "commission of public instruction," that was organized under the act of March 10th, 1892, would be, *ipso facto,* abolished.

The attack of the relator upon the title to office of the respondents is based principally upon the unconstitutionality of section 246 of the act of 1902. The act of 1900 classified all school districts, for the purposes of the management of the public schools, with respect to a single characteristic of the several municipalities in which those districts are respectively located. Whatever the corporate form of the municipality, whether city, incorporated town, borough or township, if the municipality was divided into wards the management of its free public schools was to be in the hands of a board of education, to be either appointed or elected, according as the people should determine. But all school districts that were located within a municipality not divided into wards (whatever the corporate form of the municipality) were in any event to be under the control of a board of education elected by the people. By the act of 1902 a classification of school districts, for the general purposes of the act, is made solely with respect to the corporate form of the municipality within which the district is located—that is to say, all districts that are located within a city are to be in one class, and all districts that are located within any other form of municipality are to be in another class. In the former class there is a referendum with respect to the method of selecting members of the board of education. In the latter class the members of the board are to be elected by the people, irrespective of the views of the people upon the propriety of that mode of selection.

The principal ground upon which the relator claims that section 246 of the act of 1902 is unconstitutional is that in confirming proceedings taken under the referendum contained in the act of 1900 and the supplement of 1901, that section sets apart in a class by themselves those school districts that happen within a limited time to have taken certain proceedings under an unconstitutional law. It is clear that this attack affects not only the title of the respondents to hold office, but affects the existence of the office itself. Indeed, it seeks to deprive the respondents of office only by demonstrating that the board of education of which they claim to be members has no corporate existence.

This is the precise question that, as this court has repeatedly held, cannot be litigated by a private relator, and will be determined only at the instance of the attorney-general acting in his public capacity as the representative of the people of the state.

It is equally obvious that if we were to determine that the act of 1902 is void *in toto* by reason of its classification of school districts solely with respect to the corporate form of the municipality within which the district is located, the result would be the same so far as the present controversy is concerned. For, if the whole act falls, the present board of education of the city of Camden has no legal existence, and it is in that board only that the respondents claim membership.

The respondents are entitled to judgment on the demurrer.